PRAIRIE COUNTY *v.* GRAY.

Opinion delivered June 13, 1927.

1. COUNTIES—ALLOWANCE OF CLAIM—FRAUD.—Fraud in allowing a
   claim against the county for road and bridge work is not estab-
   lished by showing merely that the claim was not itemized or veri-
   fied, but such circumstance may be considered in determining
   whether there was fraud.

2. COUNTIES—FRAUDULENT CLAIM—REVIEW BY CIRCUIT COURT.—
   Where there was testimony which supported a finding that certain
   county warrants were fraudulently issued by the county court,

*held* that the·circuit court had the right to inquire and determine what amounts were properly due on such claims. ·.

3. ·   Counties—allowance of claim—taxpayer's appeal.—A taxpayer's appeal.from the county court order allowing certain contractor's claims for bridge and road work *held* to confer jurisdiction on the circuit court to inquire and determine what amounts were properly due on the claims.

4: Appeal and error—sufficiency of evidence.—Where an appeal presents nothing but question of fact, the Supreme Court must affirm the judgment·of the circuit court, if the testimony was legally sufficient to support the findings made.

Appeal from Prairie·Circuit Court, Northern District; *George W. Clark,* Judge; affirmed.

*Gregory .& Holtzendorff, Chas. A. Walls, W. J. Waggoner,* and *Trimble & Trimble,* for appellant.

*Cooper Thweatt* and *John D. Thweatt,* for appellee.

Smith, J. . Appellee, R. A. Gray, entered into a contract with Prairie County to do·certain road and·bridge work and to drag certain other roads and to build certain bridges. J. F. Sims was the county judge at the time this contact was made.· Gray built a dump about three miles·long, and filed four claims for moving the earth used in its·construction. One·claim was for $896.60 for moving 4,483 cubic yards; the second for $929 for moving 4,645 yards, the third for $649 for moving 3,245 yards,.and the fourth for $847.40 for moving 4,237 yards. Other claims were filed for grading and for dragging the roads and for construction of two bridges. All the claims were allowed in full. None of the claims were verified, and some of them were not itemized.

Sims was succeeded as county judge by George W. Craig, who, shortly after his induction into office, made an order calling in all outstanding county warrants for reissuance, and a finding was made by him that certain warrants issued to appellee were fraudulent and had been issued collusively by his predecessor, and new warrants were issued Gray for the amount found due by Judge Craig for services actually performed under the contract: ·

W. L. Sanders, a citizen and taxpayer of the county, prayed an appeal from the order allowing the claims of Gray, and this appeal was consolidated and heard with the appeal from the order of the county court made upon reissuing the warrants.

It was decided in the case of *Monroe County* v. *Brown,* 118 Ark. 524, 177 S. W. 40, that the county court, in the allowance of claims against the county, acts judicially, and that its judgments are not open to collateral attack except for fraud or lack of jurisdiction, but that, when the court has ordered warrants to be called in for reissuance under the power so to do conferred by statute, the authority exists to reject warrants issued illegally or fraudulently. It was there also decided that, while the mere fact that the county court had erroneously allowed a claim for an excessive amount does not call for reinvestigation and review in the calling-in proceeding under the statute, yet, if fraud was practiced in the allowance itself, the claim is an illegal one, and may be canceled, but, when canceled, it should then be allowed for the amount actually due by the county.

The evidence tending to show collusion in the issuance of the claims is as follows: They were not itemized or verified. These circumstances alone do not establish fraud, although they are proper circumstances to consider in determining whether there was fraud.

In the case of *Lamb & Rhodes* v. *Howton,* 131 Ark. 211, 198 S. W. 521, it was held that the failure to verify a claim did not operate to defeat the jurisdiction of the county court to allow it, and that the verification might be supplied in the circuit court.

It was further shown by the testimony, however, that a claim was allowed for the construction of two bridges, each sixteen feet long, at a certain crossing, whereas only one bridge was built at that crossing, and it was only twelve feet in length. It was shown also that the county judge drew most of the warrants which he had ordered issued to Gray.

We conclude therefore that the testimony supports the finding that certain warrants were illegally issued, and the court therefore had the right to inquire and to determine what amounts were properly due on the claims. The appeal of the taxpayer would also confer this jurisdiction.

The judgment of the circuit court affirmed the action of the county court in certain respects, but reversed the judgment of the county court in others by ordering allowance to be made in larger amounts than those fixed by the county court, and the county has appealed from this order. It appears therefore that the present appeal presents nothing but questions of fact, and we must therefore, under settled rules of practice, affirm the judgment of the circuit court if the testimony is legally sufficient to support the findings made. *Jones* v. *Glidewell*, 53 Ark. 161, 13 S. W. 723; *Matthews* v. *Clay County*, 125 Ark. 136, 188 S. W. 564.

The principal items involved are for the earth excavated and placed in the road, the contract for which was twenty cents per cubic yard. Judge Craig employed two engineers to check this work, and, according to their testimony, the allowances were grossly excessive. The county surveyor had given appellee estimates on the work as it progressed, and these estimates, four in number, totaled 16,610 yards. One of the engineers employed by Judge Craig placed the yardage at 2,960.2, the other at 3,520.7.

The county surveyor explained how these estimates were made, and testified that they were correct, except that he had made a mistake of 4,000 yards in his calculations.

H. R. Carter testified, in appellee's behalf, that he saw the bench marks placed by the county surveyor, and that he checked the notes and found them correct, and that, in his opinion, it would have been impossible for the county surveyor to have "framed up" his notes. It was Carter who discovered the error of 4,000 yards in the county surveyor's estimates, but, notwithstanding

this fact, Carter testified that, in his judgment, 12,699 cubic yards of earth had been moved. In addition to this testimony, appellee himself testified that he had moved a quantity of earth as great at least as that stated by Carter.

The circuit court rendered judgment in appellee's favor for moving the amount of earth which Carter stated had been moved, at the contract price, and, as the testimony supports that finding, we cannot disturb it.

The finding of the county court in regard to the allowance for the bridge does not appear to be questioned. Indeed, appellee himself testified that he did not present a claim for two bridges, and could not explain why this was done.

As to the items for grading and dragging the roads, it suffices to say that appellee testified as to the number of days on which he had worked and the number of men and teams employed, and there appears to be no real contradiction of this testimony.

The judgment of the court allowing these items appears to be supported by legally sufficient testimony, and the judgment will therefore be affirmed.